IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BORDERPLEX INVESTMENT PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:16-CV-00193-KC |
| | ) | |
| BORDERPLEX REALTY TRUST, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

INDEX OF AUTHORITIES ............................................................................................................... ii

STATEMENT OF THE ISSUES ..................................................................................................... iv

I.      INTRODUCTION ................................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................................2

III.    ARGUMENT .....................................................................................................................10

        A.      Standard of Review on a Rule 12(b)(6) Motion to Dismiss ..................................10

        B.      Heightened pleading standard for federal securities fraud claims ........................11

        C.      Plaintiff has failed to plead a claim for which relief can be granted under
                Section 10(b) of the Securities Act and Rule 10b-5 ..............................................13

                1.      Plaintiff failed to properly plead an actionable material
                        misrepresentation by Defendant ................................................................14

                2.      Plaintiff failed to properly plead the requirement of scienter ..................16

                3.      Plaintiff also failed to properly plead the requirements of reliance
                        and causation ..............................................................................................20

        D.      Dismissal of remaining state law claims for lack of jurisdiction ..........................20

IV.     CONCLUSION ..................................................................................................................21

CERTIFICATE OF SERVICE ......................................................................................................22

# INDEX OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336 (5th Cir. 2002) ...................................11

*Abrams v. Baker Hughes Inc.,* 292 F.3d 424 (5th Cir. 2002) ....................................................11,12

*Barrie v. Intervoice–Brite, Inc.,* 397 F.3d 249 (5th Cir. 2005),
    *modified and reh'g denied,* 409 F.3d 653 (5th Cir. 2005) ...................................................17

*Basic Inc. v. Levinson,* 485 U.S. 224 (1988)................................................................................14

*Batiste v. Island Records Inc.,* 179 F.3d 217 (5th Cir. 1999),
    *cert. denied,* 528 U.S. 1076 (2000)....................................................................................20

*Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343 (1988)................................................................21

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000)..............................3,7,10,11

*Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333 (5th Cir. 2008) ..............................................10,11

*Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278 (5th Cir. 2006) ................................10,17

*Fine v. Am. Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990) ........................................................17

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552 (5th Cir. 2002).........................11,12

*Ind. Elec. Workers' Fund IBEW v. Shaw Group, Inc.,* 537 F.3d 527 (5th Cir. 2008) .....13,14,15,16

*Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27 (2011) ................................................13,16,18

*Melder v. Morris,* 27 F.3d 1097 (5th Cir. 1994) ..........................................................................12

*Rodriguez v. Rutter,* 310 Fed.Appx. 623 (5th Cir. 2009)...............................................................11

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353 (5th Cir. 2004) ........10,12,17,18

*Stokes v. Gann,* 498 F.3d 483 (5th Cir. 2007) (per curiam)............................................................9

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148 (2008) ...............13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007)................................................10

*Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061 (5th Cir. 1994)........................................10,12,16

**PAGE**

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429 (7th Cir.1993) ............................11

*Wolfe v. Bellos*, 3:11–CV–02015–L, 2012 WL 652090 (N.D. Tex. Feb 8, 2012) ..................11,21

**STATUTES**

17 C.F.R. § 240.10b–5(b) ................................................................................................13,14

15 U.S.C § 78aa ..............................................................................................................1,20

15 U.S.C. § 78j(b) ...............................................................................................................13

15 U.S.C. § 78u–4(b) ..............................................................................................12,14,16,18

28 U.S.C. § 1331 ..............................................................................................................1,20

28 U.S.C. § 1367 ..............................................................................................................1,20

**RULES**

Fed. R. Civ. P. 9(b) ..........................................................................................................11,12

Fed. R. Civ. P. 12(b)(1) ........................................................................................................21

Fed. R. Civ. P. 12(b)(6) ........................................................................................................21

## STATEMENT OF THE ISSUES

1.      Whether Plaintiff's federal securities fraud claim under Section 10(b) of the Securities Act of 1934 and Rule 10b-5 should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2.      Whether Plaintiff's remaining state law claims should be dismissed for lack of federal jurisdiction upon dismissal of Plaintiff's federal securities fraud claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

1.      Plaintiff's Complaint fails to state a claim for which relief can be granted pursuant to Section 10(b) of the Securities Act of 1934 and Rule 10b-5, because the Private Placement Memorandum ("PPM") and other documents provided by Defendant to Plaintiff, which Plaintiff admits receiving in the Complaint, clearly and unambiguously disclose the very information that Plaintiff alleges was concealed by Defendant.

2.      The crux of Plaintiff's securities fraud claim is that Defendant allegedly failed to disclose certain compensation terms in Defendant's agreement with Encore Enterprises, Inc. ("Encore").  However, the PPM discloses the terms of the Contribution Agreement expected to be signed between Defendant and Encore.  Further, the Contribution Agreement executed between Defendant and Encore, which contains the entire agreement between Defendant and Encore with respect to the subject transactions, was provided to Plaintiff by email dated February 17, 2016, more than a month before Plaintiff signed and returned its Subscription Agreement to Defendant on March 18, 2016.  Plaintiff's securities fraud claim therefore fails based on the express terms of the documents and should be dismissed pursuant to Rule 12(b)(6).

3.      Plaintiff's remaining state law claims should be dismissed for lack of federal subject matter jurisdiction.  Plaintiff's sole basis for federal jurisdiction is its federal securities fraud claim pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.  Plaintiff asserts only supplemental jurisdiction over the rest of its state law claims pursuant to 28 U.S.C. § 1367.  Upon dismissal of Plaintiff's federal securities fraud claim, the remaining state law claims should be dismissed for lack of federal jurisdiction.

## II.    FACTUAL BACKGROUND

4.    The Complaint alleges that Defendant is a Real Estate Investment Trust formed in 2006 to acquire income-producing commercial properties in the downtown El Paso market.  (Doc. 1 p. 5 ¶¶ 13-14).  According to the Complaint, Defendant implemented a new investment strategy beginning in 2014 focused on the acquisition and development of multi-family housing in certain rapidly-growing markets in the southwestern United States and began negotiating a potential joint venture with Encore in 2015 to accomplish the new strategy.  (*Id.* ¶ 14).  Plaintiff alleges that Defendant needed capital from outside investors and contacted Plaintiff's manager, Daniel Burrell, to discuss investing in the joint venture.  (*Id.* pp. 5-6 ¶¶ 15-16).

5.    Plaintiff admits in the Complaint that Mr. Burrell was provided with extensive information about the joint venture in October 2015, including a "roadshow" presentation about the project and the investment strategy to be implemented.  (*Id.* pp. 6-7 ¶¶ 7-18).  Plaintiff admits that it was explained to Mr. Burrell that the offering was for the purpose of securing cash to be contributed by Defendant to the real estate joint venture with Encore, and that Encore would contribute five assets (real estate development projects) in exchange for membership interests in the joint venture.  (*Id.* p. 7 ¶ 18).  In other words, Defendant was going to contribute cash and Encore was going to contribute real estate projects to the joint venture. (*Id.*). The joint venture was going to be known as the "DownREIT." (*Id.*).

6.    Plaintiff admits in the Complaint that it understood that Encore would receive "its equity" for its contribution of the five assets in the form of units of ownership interests in the DownREIT. (*Id.*). Plaintiff also admits that Mr. Burrell met Defendant's representatives and received extensive information regarding Defendant's operating structure and organization, and

the structure, financial projections and assumptions of the anticipated DownREIT, among other information.  (*Id.* ¶ 19).

7.     Plaintiff admits receiving the PPM on November 23, 2015.  (*Id.* p. 8 ¶ 21; *see* Ex. A).[1]  According to the Complaint, the PPM discloses that "[t]he total development cost for all Pipeline Projects is approximately $232.4M, and will require total equity of approximately $67.11M, $47.12M of which will consist of cash contributed by our Operating Partnership and $19.99M of which will be Encore's contributed equity in the Pipeline Projects."  (*Id.* p. 8 ¶ 22). Plaintiff admits receiving a Supplement to the PPM on January 29, 2016, which extended the initial closing until April 30, 3016.  (*Id.* p. 10 ¶ 27; Ex. B).[2]

8.     In addition to receiving the PPM, the Supplement, and extensive information about the anticipated DownREIT, Plaintiff admits pursuing due diligence with respect to the transaction, including numerous communications with Defendant about the compensation to Encore.  (*Id.* ¶ 28).  One of those communications was an email dated February 17, 2016 from Defendant to Plaintiff enclosing a copy of the Contribution Agreement between Defendant and Encore.[3]  The Contribution Agreement contains the entire agreement between Defendant and Encore with respect to the transactions at issue.  (Ex. C p. 27, Sec. 9.06).  Thus, as of February 17, 2016, the terms of the agreement between Defendant and Encore had been fully disclosed to Plaintiff.

---

[1] A copy of the PPM is attached hereto as Exhibit A.  The PPM is expressly referenced in the Complaint and is central to Plaintiff's claim.  This Court therefore can consider the PPM and its terms in ruling on this Motion to Dismiss pursuant to Rule 12(b)(6) without converting it to a motion for summary judgment.  *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).

[2] The Supplement is attached hereto as Exhibit B.  The Supplement is also referenced in the Complaint and is material to Plaintiff's claim.  *See Collins,* 224 F.3d at 498-99.

[3] The email dated February 17, 2016 from Defendant to Plaintiff attaching the Encore Borderplex, LLC Contribution Agreement and First Amendment to Encore Borderplex, LLC Contribution Agreement is attached hereto as Exhibit C, without the attachments.  *See supra* Notes 1-2; *Collins,* 224 F.3d at 498-99.  The attachments to the email, the Contribution Agreement and First Amendment thereto, are subject to a confidentiality agreement and will be filed by separate motion under seal.  Defendant hereby incorporates by reference such documents into this motion as if fully set forth in Exhibit C to this Motion.

9.     Plaintiff claims that it "understood, based on the communications with, and the materials provided by [Defendant], that Encore would receive ownership units in the DownREIT *equivalent* to its equity in the contributed Pipeline Projects."  (*Id.* p. 11 ¶ 30) (emphasis added). Plaintiff alleges that it received an updated version of the "roadshow" presentation on November 17, 2015, and an email on March 2, 2016 stating that "Encore would be contributing $19.99 million to the DownREIT."  (*Id.* pp. 11-12 ¶ 30).  Plaintiff claims that it "understood that Encore, for its contribution of Pipeline Projects, would receive DownREIT ownership units *representative* of its actual equity (*i.e.,* investment) in the contributed projects."  (*Id.* p. 12 ¶ 30) (emphasis added).

10.     It is not clear why Plaintiff supposedly understood that the "equity" in the projects contributed by Encore would be *equivalent* or *representative* of the "investment" or "cost incurred" by Encore in such projects, since the PPM and the Contribution Agreement make no such statements.  The PPM explains in great detail the terms of the equity contribution by Encore in exchange for the equity to be received in the DownREIT:

*Acquisition of Encore's Multi-family Platform and Pipeline Projects*

The acquisition of the multi-family development operations of Encore Multifamily, LLC (*"Encore Transaction"*) will be effected through the formation of a Delaware limited liability company to be known as "Encore Borderplex Multi-Family, LLC" which will be owned by our Operating Partnership and a wholly-owned Encore entity as the sole members (the *"DownREIT"*). Encore will contribute up to five current multi-family development pipeline projects (the *"Pipeline Projects"*) to the DownREIT and our Operating Partnership will contribute cash. Following such contribution, the development and construction of the Pipeline Projects will be completed within the DownREIT. **The five Pipeline Projects contributed by Encore have a total cost of approximately $234.4M, and will require total equity of approximately $67.11M, $47.12M of which will consist of cash contributed by our Operating Partnership, and $19.99M of which will be Encore's contributed equity in the Pipeline Projects…**
…

**The value of the Pipeline Projects contributed by Encore shall equal Encore's "equity" in each Pipeline Project, based upon the projected stabilized fair market value of each Pipeline Project. While the Pipeline Projects will be contributed by Encore at the agreed stabilized fair market value of each Pipeline Project, the**

**Company believes that this agreed contribution value is still less than the market value of the five Pipeline Projects upon stabilization…**

(Ex. A p. 36-37) (emphasis added).  Thus, the PPM clearly discloses that the $19.99 million in securities to be issued to Encore upon contribution of the Pipeline Projects to the DownREIT is based on an "agreed stabilized fair market value" of the equity contributed by Encore, which value was determined based on "projected return upon stabilization." (*Id.*; *cf* Chart below).  The PPM does not state that the $19.99 million in securities to be issued Encore upon contribution of the Pipeline Projects to the DownREIT is based on Encore's cost, or out of pocket cash investment in the contributed Pipeline Projects. (*Id.*). There is nothing hidden or concealed about this concept. The following explanatory chart is provided in the PPM to illustrate this concept:

**Equity**
**(in thousands)**

| Property | Total Cost (including Operating Deficit)[1] | Borderplex Units/Cash | Encore Units (in Dollars) | Debt[2] (in thousands) | Operating Partnership Return Upon Stabilization |
|---|---|---|---|---|---|
| Sendero Ranch | $ 33,055 | $ 11,444 | $       0 | $  21,610[3] | 8.10% |
| Evans Station | $ 49,652 | $  7,374 | $  6,560 | $  35,718 | 9.5% |
| Swiss Avenue | $ 45,508 | $  7,194 | $  5,028 | $  33,286 | 9.7% |
| River Walk | $ 72,165 | $  9,993 | $  8,411 | $  53,762 | 9.22% |
| Grand Mission | $ 34,060 | $ 11,110 | $       0 | $  22,950[4] | 9.5%[5] |
| Total | $234,440 | $ 47,115 | $ 19,999 | $ 167,326 | 9.21%[5] |

[1] HUD deposits of approximately $12 million are included in equity amount.
[2] HUD financing is anticipated for all five Pipeline Projects.
[3] 3.94% HUD financing in place; first units should be delivered in fall of 2015.
[4] 3.4% HUD financing in place.
[5] Weighted average return on all five Pipeline Projects.

(*Id.* p. 37).  Thus, the contribution of equity in the contributed projects in exchange for equity interests in the DownREIT is fully disclosed in the PPM.

11.     Further, Plaintiff received a copy of the Contribution Agreement between Defendant and Encore.  (Ex. C).  The Contribution Agreement explains in great detail the consideration to be received by Encore in exchange for its contribution of the various projects. (*Id.* p. 8).  Detailed schedules are attached to the Contribution Agreement disclosing the terms of

the contribution by Encore, the equity in the DownREIT to be issued to Encore, and the development and other fees to be paid to Encore. (*Id.* Sch. R1-R4). The Contribution Agreement contains Financial Statements (balance sheets and income statements for each of the Pipeline Projects), which disclose all assets, liabilities, income and expenses for each of the projects to be contributed by Encore. (*Id.* Sch. 3.20). The Contribution Agreement contains the entire agreement between Defendant and Encore. (Ex. C p. 27, Sec. 9.06). Defendant has no agreements with Encore outside the Contribution Agreement. (*Id.*).

12.    Plaintiff alleges that the PPM and Contribution Agreement fail to disclose "$13.8 million in compensation to Encore." (Doc. 1 p. 14 ¶ 34). However, there is no $13.8 million "compensation payment" to Encore in this transaction and therefore such "payment" is not mentioned either in the PPM or the Contribution Agreement. Plaintiff arrives at this fictional number by conflating certain numbers in the PPM and the Contribution Agreement and arguing that the difference amounts to a "mark-up" or "up-front payment." The balance sheets for the projects to be contributed by Encore show a combined "cost" or "paid in capital" incurred by Encore of $6.1 million as of the date of those balance sheets, November 30, 2015. (Ex. C. Sch. 3.20). The "agreed value" of the Encore contribution is $19.99 million. (Ex. A. p. 37). Plaintiff subtracts the $6.1 million costs shown on the balance sheets from the $19.99 million in agreed contribution value and arrives at the $13.8 million figure. But the PPM and the Contribution Agreement do not state that the equity in the DownREIT to be issued to Encore will be *equal* to the "costs" actually incurred by Encore on the project as of November 30, 2015. To the contrary, these documents clearly state that the value to be given to Encore for its contribution is based on the "projected stabilized fair market value of each Pipeline Project." (Ex. A. p. 36-37; Ex. C Sch. R1-R4). Furthermore, the Contribution Agreement clearly shows that Encore's actual, aggregate

cost or "paid-in-capital" for such projects is only $6.1 million. Indeed, only because of such disclosures was the Plaintiff able to calculate the $13.8 million differential that it now alleges was not disclosed.

13.     Plaintiff alleges in the Complaint that it had numerous verbal communications with Defendant about the terms of the agreement with Encore during the first part of 2016, and that Defendant never disclosed any additional fees or compensation beyond those stated in the PPM. (*Id.* p. 13 ¶ 31).  However, one of those communications was the email dated February 17, 2016, whereby Defendant provided Plaintiff a complete copy of the Contribution Agreement with Encore.  (Ex. C).  Defendant had no obligation to make verbal disclosures to Plaintiff about matters that were disclosed in writing.

14.     Having had ample opportunity to review the PPM and Contribution Agreement, and after conducting due diligence for months and having multiple discussions with Defendant regarding the terms of the deal, Plaintiff signed a Subscription Agreement on March 18, 2016.[4] The Subscription Agreement provides that the subscription "is and shall be irrevocable and shall survive and shall not be affected by the subsequent death, disability, incapacity, dissolution, bankruptcy or insolvency" of Plaintiff. (Ex. D p. 1 ¶ 1(a)).  The Subscription Agreement also contains a representation by Plaintiff that all of its owners (including Mr. Burrell) are Accredited Investors within the meaning of Rule 501 of Regulation D of the Securities Act of 1933.  (*Id.* Sch. I-1).[5]  Plaintiff's commitment under the Subscription Agreement was to purchase Plaintiff's

---

[4] The Subscription Agreement is attached hereto as Exhibit D. *See supra* Notes 1-3; *Collins*, 224 F.3d at 498-99. This version of the Subscription Agreement contains some underlining not contained in the original.

[5] The PPM expressly states that (i) the securities offered thereunder are being offered only to "accredited investors", as defined under the Securities Act of 1933 ("Securities Act") and, (ii) the securities have not been registered under the Securities Act or the laws of any other jurisdiction, but are offered pursuant to exemptions promulgated under such laws.  Defendant relied for its exemption on Rule 506 of Regulation D.  Under Regulation D, whether an issuer has a duty to furnish information to prospective purchasers depends on the nature of the purchasers.  If the issuer offers and sells its securities to non-accredited investors, then the issuer is required to furnish to investors the same kind of information as would be required if the securities were being registered.  However, if the securities are offered under

Securities at $7.75 per share in installments.  The subscription agreement provides for three installments to be made by Defendant as follows: 1) $8,500,000 during the week of February 29, 2016, in exchange for 42.50% of the Securities that were to be issued by Plaintiff; 2) $1,500,000 by no later than March 31, 2016, in exchange for 7.5% of the Securities that were to be issued by Plaintiff; and 3) $10,000,000 by no later than the week of April 18, 2016.  (Ex. D).

15.     Plaintiff admits in the Complaint that it paid the first $8.5 million to Defendant but failed to pay the remaining $11.5 million.  (Doc. 1 p. 16 ¶ 38).  Plaintiff further admits having been sued by Defendant in the 168th Judicial District Court of El Paso County, Texas, Cause No. 2016-DCV1736 for breach of the Subscription Agreement, as a result of its failure to pay the remaining $11.5 million.  (*Id.* ¶ 39).

16.     Plaintiff devotes much of the Complaint to restating in different ways the same claim; namely, that "compensation" of $13.8 million to Encore was not disclosed.  Plaintiff cites as an example the Swiss Avenue Project, and alleges that such project had negative equity, even though the PPM states that the equity contributed by Encore on such project is $5,028,000.  (Doc. 1 pp. 14-15 ¶35).  As discussed above, the PPM and Contribution Agreement clearly disclose all agreements between Defendant and Encore.  The Contribution Agreement contains a balance sheet for the Swiss Avenue Project, which discloses its assets and liabilities.  (Ex. C. Sch. 3.20).  The $5,028,000 figure is the "agreed value" given to Encore for this project based on the "projected

---

Rule 506 only to "accredited investors", the issuer is not required to furnish any specific information.  The law thus presumes that accredited investors are in a position to acquire the information on their own.  Even though not required by law to do so, the PPM provided by Defendant to all investors, including the Plaintiff, contains essentially the same information that Regulation D would require if the offering had been made to non-accredited investors.  It is important to note, however, that the federal securities laws have incorporated into the disclosure scheme mandated by Regulation D the concept that mandated disclosure to persons that qualify as "accredited investors" <u>serves no useful purpose because such category of sophisticated purchasers are in a position to acquire the information on their own</u>.  In summary, the Defendant not only disclosed the exact nature of the compensation to Encore in the PPM, but the Plaintiff had the opportunity to (and the law presumes that it did) obtain answers to any questions and clear up any confusion or lack of understanding concerning the compensation and fees to Encore.

stabilized fair market value."  (Ex. A pp. 36-37; Ex. C Sch. R1-R4).  This is disclosed in the PPM and Contribution Agreement.  (*Id.*).

17.     Plaintiff also claims that other miscellaneous matters were not disclosed, although Plaintiff does not claim that such matters were material or that it detrimentally relied on them.  For example, Plaintiff also claims in connection with the Swiss Avenue Project that Defendant failed to disclose a previous loan by the Defendant to Encore in the amount of $2.6 million.   (Doc. 1 p. 15 ¶35).  Just like the alleged "compensation" to Encore, this loan was fully disclosed.  The loan is listed in the December 31, 2015 balance sheet for the project. (Ex. C. Sch. 3.20).

18.     Plaintiff also claims that certain "risks" associated with the allegedly undisclosed $13.8 million in compensation to Encore were not disclosed, but Plaintiff does not state specifically what risks were not disclosed, other than a generic speculative risk that the "projects [may] fail."  (*Id.* p. 16 ¶ 37).  The PPM contains an entire section with detailed information about potential risks associated with the investment titled "Risk Factors," which advises potential investors of the risks associated with purchasing securities.  (Ex. A pp 8-25).  All known risks were disclosed to Plaintiff.

19.     With respect to development fees, Plaintiff generally alleges in the Complaint that $7.2 million in Developer's Fees were "poorly disclosed," but Plaintiff admits that it understood that Encore would receive $7.2 million in "Developer's Fees," as well as other various fees associated with its participation in the projects. (Doc. 1 p. 12 ¶ 31).  These were not fees that were going to be paid by the DownREIT, and they would not affect Plaintiff's investment.   All development fees affecting investors are disclosed in the PPM and Contribution Agreement.

20.     When the allegations in the Complaint are compared against the very documents that Plaintiff admits receiving, it is clear that all information about the deal, including the entire

agreement between Defendant and Encore, were fully disclosed to Plaintiff prior to its execution of the Subscription Agreement.

### III.   ARGUMENT

A.   <u>Standard of Review on a Rule 12(b)(6) Motion to Dismiss.</u>

21.    A motion to dismiss for failure to state a claim under Rule 12(b)(6) is reviewed "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann,* 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  Courts, however, "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted)). "To avoid a dismissal for failure to state a claim, 'a plaintiff must plead specific facts, not mere conclusory allegations.'" *Dorsey*, 540 F.3d at 338 (quoting *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994).

22.    Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. *Dorsey*, 540 F.3d at 338; *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006). A court is permitted, however, to rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey*, 540 F.3d at 338; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007). In addition, the Fifth Circuit allows review of documents attached not to the pleadings, but to the motion to dismiss, if they are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).  To this end, the Fifth Circuit has explained:

> It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not go outside the complaint. There is one recognized exception to that rule: A district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's

claim.

*Rodriguez v. Rutter*, 310 Fed.Appx. 623, 627 (5th Cir. 2009) (citing *Collins,* 224 F.3d at 498-99) (other citation and quotations omitted). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins,* 224 F.3d at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)); *see Wolfe v. Bellos*, 3:11–CV–02015–L, 2012 WL 652090 at * 4 (N.D. Tex. Feb 8, 2012) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims."). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins,* 224 F.3d at 498-99.

      B.     <u>Heightened pleading standard for federal securities fraud claims.</u>

      23.    Federal securities fraud claims are subject to the pleading requirements of Rule 9(b). *Dorsey*, 540 F.3d at 338-39; *see Abrams v. Baker Hughes Inc.,* 292 F.3d 424, 430 (5th Cir. 2002). Under Rule 9(b), a heightened level of pleading is imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 564–65 (5th Cir. 2002) (internal quotations omitted). Put simply, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how" of the events at issue. *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 350 (5th Cir. 2002) (internal quotations omitted).

24.     "Importantly, though, the second sentence of Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter: 'Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.'" *Tuchman,* 14 F.3d at 1068 (quoting FED. R. CIV. P. 9(b)). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris,* 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth *specific facts* supporting an inference of fraud." *Id.* "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Herrmann Holdings Ltd.,* 302 F.3d at 565 (internal quotations omitted). "If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief. However, this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Tuchman,* 14 F.3d at 1068 (internal quotations and citation omitted).

25.     In addition to Rule 9(b), federal securities fraud claims are also subject to the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u–4(b); *Abrams,* 292 F.3d at 430. The PSLRA enhances the particularity requirements of Rule 9(b). *See Southland Sec. Corp.,* 365 F.3d at 362–63. Under the PSLRA, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

26.     Section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act") makes it unlawful to:

use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 implements Section 10(b) of the 1934 Act and makes it unlawful

for any person, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5(b). To state a claim under section 10(b) and Rule 10b-5, a plaintiff must

allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a

connection between the misrepresentation or omission and the purchase or sale of a security; (4)

reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

*Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Investment*

*Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 157 (2008)); *see Ind. Elec. Workers' Fund*

*IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 532 (5th Cir. 2008).

C.  <u>Plaintiff has failed to plead a claim for which relief can be granted under Section 10(b) of the Securities Act and Rule 10b-5.</u>

27.     Plaintiff's Complaint falls short of pleading a proper federal securities fraud claim

under Section 10(b) of the Securities Act of 1934 and Rule 10b-5.  Plaintiff alleges in various

forms that Defendant failed to disclose a $13.8 million "payment" or "mark-up" to Encore in the

offering materials provided to Plaintiff.   However, a review of the PPM and Contribution

Agreement, which are the documents that form the basis of Plaintiff's securities fraud claim,

reveals that there is no such $13.8 million payment to Encore involved in this transaction.  Plaintiff

arrives at the $13.8 million figure by utilizing the exact numbers disclosed in the documents provided to it. The exact nature of the transaction with Encore, including the agreed value of the equity to be issued to Encore, was fully disclosed to Plaintiff in both the PPM and the Contribution Agreement.  The PPM and the Contribution Agreement, both of which Plaintiff received before signing the Subscription Agreement, disclose in no uncertain terms the terms of the agreement between Defendant and Encore. Therefore, Plaintiff's Complaint fails to meet the stringent pleading standard under PSLRA with respect to its securities fraud claim.

1. <u>Plaintiff failed to properly plead an actionable material misrepresentation by Defendant</u>.

28.     Plaintiff has failed to properly plead an actionable material misrepresentation by Defendant. In order to meet the pleading standard under PSLRA for the first element of a claim under Section 10(b) and Rule 10b-5, the plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading ...." *Shaw Group*, 537 F.3d at 533 (quoting 15 U.S.C. § 78u–4(b)(1)(B)). Importantly, Section "10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information."  *Siracusano*, 563 U.S. at 44.  "Disclosure is required under these provisions only when necessary to make ... statements made, in the light of the circumstances under which they were made, not misleading." *Id.* (citing 17 C.F.R. § 240.10b-5(b)) (quotations omitted); *see Basic Inc. v. Levinson,* 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5).

29.     In this case, Plaintiff alleges that there was a hidden payment of $13.8 million to Encore in the transaction.  As discussed above, there was no such payment, and the expected compensation to Encore was disclosed in the PPM as follows: "The value of the Pipeline Projects contributed by Encore shall equal Encore's 'equity' in each Pipeline Project, based upon the projected stabilized fair market value of each Pipeline Project. While the Pipeline Projects will be

contributed by Encore at the agreed stabilized fair market value of each Pipeline Project, the Company believes that this agreed contribution value is still less than the market value of the five Pipeline Projects upon stabilization…" (Ex. A p. 36-37) (emphasis added).

30.     The expected compensation to Encore was also disclosed in the Contribution Agreement, which contains the entire agreement between Defendant and Encore and was provided to Plaintiff at least several weeks before Plaintiff signed the Subscription Agreement.  (*cf.* Ex. C & D).  The Contribution Agreement states the terms of the equity contribution by Encore, and the equity in the DownREIT that Encore would receive in exchange.  (Ex. C p. 8, Schs. R1-R4).  The Contribution Agreement also contains balance sheets and income statements, showing the assets and liabilities of each project as of November 30, 2015.  It is from these balance sheets that Plaintiff calculates the $6.1 million in costs, which Plaintiff then subtracts from the $19.99 million to arrive at the $13.8 million figure.  The fact that Plaintiff understands this differential now means that it was capable of understanding it on February 17, 2016, when it received the Contribution Agreement.

31.     There is no affirmative representation in either the PPM or the Contribution Agreement that the equity in the DownREIT to be issued to Encore would be *equal* to the cost incurred by Encore in the projects as of November 30, 2015.  Plaintiff's claim that it "understood" that these figures would be "equivalent" is contradicted by the very documents upon which Plaintiff relies and falls short of properly pleading an actionable material misrepresentation by Defendant. *Shaw Group*, 537 F.3d at 533.

32.     For the same reasons, Plaintiff's allegations regarding the negative equity in the Swiss Avenue Project fail to state an actionable material misrepresentation, as they are part of the alleged $13.8 million compensation.  Further, the balance sheet for this project was provided to

Plaintiff in the Contribution Agreement. (Ex. C. Sch. 3.20).  Plaintiff also complains about an allegedly undisclosed $2.6 million previous loan to Encore, but his loan is also disclosed in the balance sheet.  (*Id.*).  Thus, the allegations with respect to the Swiss Avenue Project cannot form the basis of an actionable misrepresentation.  *Shaw Group*, 537 F.3d at 533.

33.    Plaintiff also alleges a "poorly disclosed" $7.2 million Developer's Fee to be paid to Encore, but Plaintiff admits in the Complaint that this compensation was in fact disclosed.  (Doc. 1 p. 12 ¶ 31).  As such, the $7.2 million Developer's Fees cannot form the basis of Plaintiff's securities fraud claim.

34.    Plaintiff therefore failed to meet the pleading standard under PSLRA with respect to any material misrepresentations by Defendant, and Plaintiff's securities fraud claim under Section 10(b) of the Securities Act and Rule 10b-5 should be dismissed.

2.    <u>Plaintiff failed to properly plead the requirement of scienter</u>.

35.    Plaintiff also failed to properly plead the scienter element of its securities fraud claim.  "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Siracusano,* 563 U.S. at 44. "Under the PSLRA, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. §78u–4(b)(2)(A)). "This standard requires courts to take into account 'plausible opposing inferences.'" *Id.* (quoting *Tellabs,* 551 U.S. at 323) "A complaint adequately pleads scienter under the PSLRA 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* "In making this determination, the court must review 'all the allegations holistically.'" *Id.*

36.     The scienter element must be pleaded with respect to a specific individual or group of individuals.  To this end, the Fifth Circuit Court of Appeals has explained that:

> [T]his court has rejected the group pleading approach to scienter and instead looks to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.

*Shaw Group,* 537 F.3d at 533; *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 368 (5th Cir. 2004).  Further, "[t]his court follows the general rule and has stated repeatedly that '[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.'" *Id.* at 534 (citing *Barrie v. Intervoice–Brite, Inc.,* 397 F.3d 249, 264 (5th Cir. 2005), *modified and reh'g denied,* 409 F.3d 653 (5th Cir. 2005) (quoting *Fine v. Am. Solar King Corp.,* 919 F.2d 290, 297 (5th Cir. 1990)); *see also Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 290 (5th Cir. 2006) ("[F]ailure to follow accounting standards, without more, does not establish scienter."). Thus, the element of scienter is not easily established with respect to statements of accounting concepts such as "fair value," because "[v]aluations of assets, especially contracts and assets acquired from bankrupt companies, as well as the application of sophisticated accounting standards like 'fair value,' leave broad scope for judgment and informed estimation; this is another way of saying that determinations on such matters can differ reasonably and sizably." *Id.* at 536. "To plead scienter adequately, plaintiffs must state with particularity facts giving rise to a strong inference that the 'party [knew] that it [was] publishing materially false information, or the party [was] severely reckless in publishing such information." *Id.* (quoting *Barrie,* 397 F.3d at 264).

37.     In this case, Plaintiff has not pleaded sufficient facts giving rise to a strong inference that Defendant knew it was publishing materially false information.  As discussed above, there are

no misrepresentations or omissions of material facts that would make any representation in the PPM and the Contribution Agreement misleading. Plaintiff has pleaded at best a flawed understanding of the equity exchange between Encore and the DownREIT. As such, Plaintiff has failed to properly plead the required scienter to support a securities fraud claim. When the offering documents are examined, no inference can be drawn that Defendant knew it was making any misrepresentations or was reckless in making any of the statements contained therein, and Plaintiff has not pleaded any independent facts to support such inference.

38.     Plaintiff's use of colorful language in the Complaint cannot support the pleading standard for scienter. Plaintiff alleges that "this case arises out of BRT's intentional deception and deliberate concealment of material facts relating to its investment offering in order to fraudulently induce Plaintiff and its investors into signing a subscription agreement and funding $8.5 million toward the purchase of BRT's securities." (Doc. 1 p. 2 ¶2). However, these are empty conclusory allegations of fraud and do not state with particularity facts giving rise to a strong inference that Defendant acted in a malicious manner. *Siracusano,* 563 U.S. at 44; 15 U.S.C. §78u–4(b)(2)(A). Plaintiff does not plead any specific facts as to the state of mind of Defendant, and Plaintiff does not state which representatives of Defendants allegedly knew or should have known of any misrepresentations. Plaintiff instead uses the "group pleading" approach that the Fifth Circuit has rejected. *Shaw Group,* 537 F.3d at 533; *Southland¸* 365 F.3d 353 at 368.

39.     Plaintiff's entire scienter allegations are summarized in paragraphs 5 and 6 of the Complaint as follows:

> Simply put, BRT made Encore an "offer it could not refuse," and attempted to hide the true terms of that deal from Plaintiff and other investors. On information and belief, BRT's Board of Trustees was willing to enter into such a one-sided transaction because it needed to acquire Encore's multi-family development platform to avoid having to completely unwind BRT after years of well documented struggles. In other words, BRT was faced with the choice of their winding up the

business or implementing a drastic change in investment strategy through a joint venture with a developer (Encore) with assets and a team capable of executing the new strategy.  Regrettably, in choosing the later approach, BRT disregarded the unreasonable cost and the best interest of the investors.

BRT's desperation to do this deal led it to agree to dreadful business terms. However, in order to attract investors to provide the capital necessary for the Encore transaction, BRT found it necessary to hide and obscure the true terms of the deal. Rather than comply with its obligation to make full and fair disclosures regarding the material terms of the Encore "joint venture" – and in particular the excessive up-front compensation to Encore – BRT hid and obscured the truth about the deal and the risks attendant thereto, including lower investment returns, management and partnership challenges, greater levels of future dilution, and challenges to successfully executing the business plan.

(*Id.* pp. 3-4 ¶¶ 4-5).  PSLRA provides that, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. 78u-4(b)(1).  Here, Plaintiff makes multiple allegations of scienter based on "information and belief" but fails to plead sufficient facts to support the basis of such belief.  Plaintiff merely states that Defendant was "struggling" and "desperate" and "was willing to enter into such a one-sided transaction because it needed to acquire Encore's multi-family development platform to avoid having to completely unwind BRT after years of well documented struggles."  However, Plaintiff does not state the basis upon which it believes these allegations to be true.  Plaintiff's speculation that Defendant was on the verge of "winding down" without the Encore deal is unsupported by any facts.

40.     More importantly, these conclusory allegations are affirmatively negated by the audited financial statements of Defendant provided to Plaintiff in the PPM, which show the healthy financial condition of Defendant at the time of the transaction.  (Ex. A. Annex B, pp. A-7-54) (showing that Defendant's assets exceeded its liabilities by over $24 million in 2014 and over $27 million in 2013).  Plaintiff does not claim in this case that the information provided in the audited financial statements attached to the PPM was incorrect.  Plaintiff's bare allegations of insolvency

are unsupported by any facts, in particular when read in conjunction with the audited financial statements of Defendant.

41.     Because Plaintiff failed to meet the pleading standard for scienter under PSLRA, its securities fraud claim should be dismissed.

3.     <u>Plaintiff also failed to properly plead the requirements of reliance and causation.</u>

42.     As discussed above, there are no misrepresentations in the PPM and the Contribution Agreement, and Plaintiff's allegations of scienter are not properly supported by factual allegations.  For the same reasons, Plaintiff has failed to meet the elements of reliance and causation.  Plaintiff does not sufficiently plead detrimental reliance, by merely stating that it "understood" something different than the express terms of the PPM and Contribution Agreement.  Plaintiff's reliance on any compensation terms other than those expressly stated in the PPM and the Contribution Agreement is not reasonable.  Similarly, Plaintiff has not sufficiently pleaded that its reliance on any alleged misrepresentations by Defendant is the cause of any damages to Plaintiff.  As such, Plaintiff has failed to properly plead the reliance and causation elements of its securities fraud claim.  The Court should dismiss such claim.

D.     <u>Dismissal of remaining state law claims for lack of jurisdiction.</u>

43.     Upon dismissal of Plaintiff's securities fraud claim under Section 10(b) and Rule 10b-5, Plaintiff's remaining state law claims should be dismissed for lack of federal subject matter jurisdiction.  Plaintiff's sole basis for federal jurisdiction is its federal securities fraud claim pursuant to 15 U.S.C §78aa and 28 U.S.C. § 1331.  Plaintiff asserts only supplemental jurisdiction over the rest of its state law claims pursuant to 28 U.S.C. § 1367.  This Court should decline to exercise supplemental jurisdiction over such claims. *Batiste v. Island Records Inc.,* 179 F.3d 217, 227 (5th Cir. 1999), *cert. denied,* 528 U.S. 1076 (2000) (As a general rule, courts "decline to

exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see e.g., Wolfe,* 2012 WL 652090 at * 10 (after dismissing federal securities fraud claim for failure to state a claim, court declined to exercise supplemental jurisdiction and dismissed the plaintiff's remaining state law securities fraud claim and state law related tort claims).   Dismissal of the state law claims is particularly appropriate in this case, because there is already a state court case pending in the 168th Judicial District Court of El Paso County, Texas between Plaintiff and Defendant related to the same facts and transaction, *Borderplex Realty Trust v. Borderplex Investment Partners, LLC*, Cause No. 2016DCV1737, filed May 4, 2016.

## IV.   CONCLUSION

44.   Defendant respectfully prays that Plaintiff's federal securities fraud claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6), and that Plaintiff's remaining state law claims be dismissed for lack of federal jurisdiction pursuant to Rule 12(b)(1).

Respectfully submitted,

MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN,
A Professional Corporation
P.O. Drawer 1977
El Paso, Texas 79999-1977
(915) 532-2000
Fax:  (915) 541-1548


By:   */s/ David M. Mirazo*              
          **Carl H. Green**
          TX State Bar No. 08347330
          **S. Anthony Safi**
          TX State Bar No. 17516800
          **David M. Mirazo**
          TX State Bar No. 24044610

## CERTIFICATE OF SERVICE

I certify that on July 5, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which electronically sent notification to all counsel of record.


*/s/ David M. Mirazo*            
**David M. Mirazo**

1255332