THE OFFER AND SALE OF SHARES OF BENEFICIAL INTEREST IN BORDERPLEX REALTY TRUST, A MARYLAND REAL ESTATE INVESTMENT TRUST, IS MADE ONLY BY THE BORDERPLEX REALTY TRUST PRIVATE PLACEMENT MEMORANDUM AND ANY SUPPLEMENTS THERETO.

---

## SUBSCRIPTION DOCUMENTS

(Individuals, Business Entities and Simple Trusts)

OF

## BORDERPLEX REALTY TRUST

(a Maryland real estate investment trust)

---

## SUBSCRIPTION AGREEMENT INSTRUCTIONS

### BORDERPLEX REALTY TRUST

In order to invest in shares of beneficial interest in Borderplex Realty Trust (the "Securities"), prospective investors must complete the Subscription Agreement and Investor Questionnaire (the "Subscription Documents") contained in this package in the manner described below. For purposes of these Subscription Documents, the "Investor" is the person for whose account the Securities are being purchased. Another person with investment authority may execute the Subscription Documents on behalf of the Investor, but should indicate the capacity in which he is doing so and the name of the Investor.

1.    *The Offering.* Borderplex Realty Trust is offering shares of beneficial interest at a price of $7.75 per share. Unless otherwise approved, the Securities are being offered in minimum 100 share increments, with a minimum investment of 13,000 shares ($100,750.00). Unless the

1068107.2

i

E X H I B I T   D

context indicates otherwise, the terms "Borderplex", "our", "we" and "us" refer to Borderplex Realty Trust.

2.   *Completion of Subscription Agreement and Exhibits:*

   a.   Complete Exhibit A to the Subscription Agreement (page 7).

   b.   Turn to the signature page (on page 9, which has been tabbed for your convenience) and date and sign the Subscription Agreement.

   c.   Sign the joinder to the Securityholders' Agreement (attached as Exhibit B, page 10).

   d.   Sign the joinder to the Value Protection Agreement (attached as Exhibit C, page 11).

3.   *Investor Questionnaire:*

   a.   In Section A on page I-1, fill in the Investor's name, address, tax identification or social security number (as applicable) and telephone and facsimile numbers and provide all other requested information.

   b.   In Section B on page I-2, check the box or boxes which are next to the category or categories under which the Investor qualifies as an "accredited investor" under the Securities Act of 1933, as amended.  If the Investor does not fit into any of the categories, contact us as set forth below.

   c.   If the Investor is an entity, provide the information and respond to the questions in Section C on page I-3.

   d.   Check the appropriate box or boxes in Section D on page I-3.

   e.   Sign and date the Investor Questionnaire on page I-4, which has also been tabbed for your convenience.

   If you have any questions regarding completion of the Subscription Agreement, please contact Jamie Gallagher, at (915) 533-8807, or (915) 975-8141 (facsimile), or jamie.gallagher@borderplexreit.com.

4.   *Tax Form:*

   U.S. Investors must complete, sign, and date Form W-9 in accordance with the instructions to the form.  Each non-resident alien individual, foreign corporation, foreign partnership, foreign trust, or foreign estate must complete, sign, and date Form W-8BEN if applicable in accordance with the instructions to the form.  Upon receipt of your executed Subscription Agreement, and prior to acceptance of your Subscription Agreement, we will provide you with the required tax forms for your signature.

5.   *Evidence of Authorization:*

1068107.2

ii

An Investor that is a corporation may be required to submit certified corporate resolutions authorizing the subscription and identifying the corporate officer empowered to sign the subscription documents. A partnership may be required to submit a certified copy of its partnership certificate (in the case of limited partnerships) or partnership agreement identifying the general partners. (Entities may be requested to furnish other or additional documentation evidencing the authority to invest in the Securities.)

6.   *Delivery of Subscription Documents:*

Please deliver two completed and signed copies of the Subscription Documents as soon as possible to the following address:

> Borderplex Realty Trust
> Attn:  Jamie Gallagher
> 221 N. Kansas, Suite 2010
> El Paso, Texas 79901
> (915) 533-8807 (Phone)
> (915) 975-8141 (Telefax)
> jamie.gallagher@borderplexreit.com

If we accept your subscription, we will return a fully executed set of the Subscription Documents to you.

1068107.2

iii

## SUBSCRIPTION AGREEMENT
## FOR
## BORDERPLEX REALTY TRUST

(Individuals, Business Entities and Simple Trusts)

Borderplex Realty Trust
221 N. Kansas, Suite 2010
El Paso, Texas  79901

Ladies and Gentlemen:

The undersigned ("Investor") has received a Confidential Private Placement Memorandum dated October 1, 2015 (together with any supplements, the "Private Placement Memorandum") in connection with an offering (the "Offering") by Borderplex Realty Trust, a Maryland real estate investment trust ("Borderplex"), of its common shares of beneficial interest (the "Securities"). In addition to the Private Placement Memorandum, the undersigned has also received (i) this Subscription Agreement, (ii) a copy of the Securityholders' Agreement of Borderplex ("Securityholders' Agreement"), and (iii) a copy of the Value Protection Agreement applicable to the Offering, each of said documents referenced in (i) through (iii) above being in the form attached to the Private Placement Memorandum. Each of the documents referenced in (i) through (iii) above, together with the Private Placement Memorandum and the Declaration of Trust and Bylaws of Borderplex, copies of which will be provided to each investor upon request, shall be collectively referred to herein as the "Offering Documents".

1.    Subscription.

(a) Investor hereby subscribes for shares of beneficial interest in Borderplex in the amount set forth in Exhibit A.  Investor hereby agrees that this subscription is and shall be irrevocable and shall survive and shall not be affected by the subsequent death, disability, incapacity, dissolution, bankruptcy or insolvency of Investor, whether or not an Initial Funding Notice (as defined in Exhibit A) has been delivered, but the obligations hereunder will terminate if (i) this subscription is not accepted by Borderplex or (ii) the Offering is not consummated for any reason. Borderplex reserves the right to increase the size of the Offering.

(b)    Investor acknowledges that any financial forecasts prepared by Borderplex were not prepared with a view towards public disclosure or in compliance with published guidelines of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding forecasts/projections and should not be considered forecasts/projections of Borderplex's actual operating results.

2.    Acceptance of Subscription.

(a)    Investor acknowledges that Borderplex may, in its sole and absolute discretion, accept or reject this subscription, in whole or in part, for any reason whatsoever, at any time prior to the closing of the Offering. The amount subscribed, as set forth herein, or such lesser amount as to which the subscription is accepted, shall be referred to herein as the "Subscription Amount." This subscription may be accepted by Borderplex by executing the form of

1068107.2

1

acceptance at the end of this Subscription Agreement and returning an executed counterpart signature page to Investor.

(b)     Upon acceptance of this subscription, in whole or in part, Investor shall become a party to and shall be irrevocably bound by the Subscription Documents.

3.     Payment of Subscription Agreement; Default.

(a)     Investor agrees to pay the Subscription Amount in the manner and on the dates set forth in Exhibit A attached hereto.  Upon payment of the Subscription Amount in the manner and on the dates set forth in Exhibit A, Securities representing the respective amounts paid on each such date will be issued to Investor.

(b)     A default ("Default") shall occur hereunder if, for any reason, Investor fails to pay the full amount due on any Funding Date as defined in Exhibit A and such failure shall continue unremedied for a period of fifteen (15) business days immediately following written notice of such failure.  Investor agrees that if a Default occurs hereunder, Borderplex or one of its affiliates may (i) cancel without obligation the unfunded portion of Investor's subscription hereunder; (ii) repurchase all Securities purchased and fully paid for by Investor pursuant to the terms of this Subscription Agreement at a price equal to fifty percent (50%) of the aggregate purchase price paid by Investor for such Securities in the Offering and (iii) exercise any other remedy available at law or in equity.  Upon Borderplex's notice to Investor that Borderplex is exercising its rights under clause (ii) of the preceding sentence, Investor agrees to deliver the documents representing the Securities being purchased (endorsed for transfer to Borderplex or its affiliate) in exchange for a certified check payable to Investor in the amount specified in clause (ii) herein.

4.     Representations and Warranties of Investor.  Borderplex is relying upon certain exemptions from various laws and regulations which depend upon the identity and characteristics of its investors.  Accordingly, investors are being asked to make certain representations about themselves, as follows:

Investor hereby represents and warrants as follows:

(a)     Investor is aware and understands that:

(i)     Borderplex is relying upon the representations, warranties, and agreements of Investor contained in this Subscription Agreement in determining the applicability of certain laws and regulations to the transactions contemplated hereby, and accordingly, such representations and warranties shall survive the closing hereunder;

(ii)     The purchase of the Securities involves significant risks, including the risk that the Investor may not receive a return of any of its investment;

(iii)     No federal or state agency has passed upon the Securities or made any finding or determination as to the fairness of this investment, the terms of the Offering, or the sale of the Securities;

1068107.2

2

(iv)     Investor must bear the economic risk of its investment in the Securities for an indefinite period of time because (A) the Securities have not been registered under the Securities Act of 1933, as amended (the "Securities Act") and, therefore, cannot be sold or transferred unless they are either subsequently registered under the Securities Act or an exemption from such registration is available; (B) the Securities cannot be sold or transferred unless they are registered under applicable state securities laws or an exemption from such registration is available; and (C) Investor's right to transfer the Securities is further restricted as described in the Offering Documents;

(v)     There is currently no trading market for the Securities and no such market may develop;

(b)     The Securities for which Investor hereby subscribes are being acquired for Investor's own account, and not with any view toward the resale or distribution thereof, or with any present intention of selling or distributing any of the Securities, but subject nevertheless to the disposition of the Securities being at all times within Investor's control, subject to the instruments constituting and governing such Securities;

(c)     Investor has such knowledge and experience in financial and business matters that Investor is capable of evaluating the merits and risks of an investment in the Securities;

(d)     Investor has carefully reviewed the Offering Documents, has been furnished with all other materials which it considers relevant to an investment in the Securities, and has had a full opportunity to ask questions of and receive answers from Borderplex and any person or persons acting on behalf of Borderplex concerning the terms and conditions of an investment in the Securities;

(e)     If Investor is a natural person, he or she is at least twenty-one (21) years of age and legally competent to execute this Subscription Agreement and to make the representations and warranties contained herein;

(f)     If Investor is a corporation, partnership, limited liability company, trust or other entity: (i) it is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it was formed; (ii) it has all requisite power and authority to invest in the Securities as provided herein; (iii) such investment will not result in any violation of or conflict with any term of the charter or by-laws of Investor or any other organizational document or instrument by which it is bound or any law or regulation applicable to it; (iv) such investment has been duly authorized by all necessary action on behalf of Investor; and (v) this Subscription Agreement has been duly executed and delivered on behalf of Investor and constitutes a legal, valid, and binding agreement of Investor and is enforceable against Investor in accordance with its terms;

(g)     If Investor is a corporation, partnership, limited liability company, trust, or other entity, Investor either (i) has not been organized or reorganized for the specific purpose, even among other purposes, of acquiring the Securities or (ii) all of its partners, shareholders or other equity owners are accredited investors (within the meaning of Rule 501 of Regulation D under the Securities Act);

1068107.2

3

(h)     All written information which Investor has provided to Borderplex concerning Investor, Investor's financial position, and Investor's knowledge of financial and business matters, or, in the case of a corporation, partnership, limited liability company, trust, or other entity, the knowledge of financial and business matters of the person making the investment decision on behalf of such entity, including all information contained herein, is correct and complete as of the date set forth at the end hereof and may be relied upon, and if there should be any material change in such information prior to its subscription being accepted, it will immediately provide Borderplex with notice of such change;

(i)     If Investor is a resident of the United States, Investor's address listed herein is Investor's domicile or principal place of business and the only jurisdiction in which an offer to sell the Securities was made to Investor, in which such offer was accepted, and in which the sale of said Securities was closed.  If Investor is a resident of a country other than the United States, Investor's address listed herein is Investor's domicile or principal place of business, and the United States is the only jurisdiction in which an offer to sell the Securities was made to Investor, in which such offer was accepted, and in which the sale of said Securities was closed;

(j)     The responses of Investor set forth in the Investor Questionnaire are true and correct.  Without limiting the foregoing, Investor certifies it is an accredited investor within the meaning of Rule 501 under the Securities Act;

(k)     Investor acknowledges that Borderplex is relying upon certain exemptions from the registration requirements under the Securities Act and that certain disqualifications from various exemptions under the Securities Act may apply if any beneficial owner of twenty percent (20%) or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power, are subject to certain disqualifying acts or events.  Accordingly, Investor hereby represents and warrants to Borderplex that neither Investor nor any of the beneficial owners of Investor (within the meaning of Exchange Act Rule 13d-3) are subject to any of the disqualifying events specified in 12 CFR 230.506(d).  The "bad actor" disqualifications specified in 17 CFR 230.506(d) arise if such Investor and/or any such beneficial owner thereof:

(i) Has been convicted, within ten years before such sale (or five years, in the case of issuers, their predecessors and affiliated issuers), of any felony or misdemeanor[1]:
(A) In connection with the purchase or sale of any security;
(B) Involving the making of any false filing with the Commission; or
(C) Arising out of the conduct of the business of an underwriter, broker,

---

[1] This subsection shall not apply:
(i) With respect to any conviction, order, judgment, decree, suspension, expulsion or bar that occurred or was issued before September 23, 2013;
(ii) Upon a showing of good cause and without prejudice to any other action by the Commission, if the Commission determines that it is not necessary under the circumstances that an exemption be denied;
(iii) If, before the relevant sale, the court or regulatory authority that entered the relevant order, judgment or decree advises in writing (whether contained in the relevant judgment, order or decree or separately to the Commission or its staff) that disqualification under paragraph (d)(1) of this section should not arise as a consequence of such order, judgment or decree; or
(iv) If the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known that a disqualification existed under paragraph (d)(1) of this section.

1068107.2

dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(ii) Is subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before such sale, that, at the time of such sale, restrains or enjoins such person from engaging or continuing to engage in any conduct or practice:

(A) In connection with the purchase or sale of any security;

(B) Involving the making of any false filing with the Commission; or

(C) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(iii) Is subject to a final order of a state securities commission (or an agency or officer of a state performing like functions); a state authority that supervises or examines banks, savings associations, or credit unions; a state insurance commission (or an agency or officer of a state performing like functions); an appropriate federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that:

(A) At the time of such sale, bars the person from:

(1) Association with an entity regulated by such commission, authority, agency, or officer;

(2) Engaging in the business of securities, insurance or banking; or

(3) Engaging in savings association or credit union activities; or

(B) Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within ten years before such sale;

(iv) Is subject to an order of the Commission entered pursuant to section 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78 o (b) or 78 o -4(c)) or section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3(e) or (f)) that, at the time of such sale:

(A) Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer or investment adviser;

(B) Places limitations on the activities, functions or operations of such person; or

(C) Bars such person from being associated with any entity or from participating in the offering of any penny stock;

(v) Is subject to any order of the Commission entered within five years before such sale that, at the time of such sale, orders the person to cease and desist from committing or causing a violation or future violation of:

(A) Any scienter-based anti-fraud provision of the federal securities laws, including without limitation section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 CFR 240.10b-5, section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78 o (c)(1)) and section

1068107.2

5

206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)), or any other rule or regulation thereunder; or
**(B)** Section 5 of the Securities Act of 1933 (15 U.S.C. 77e);

**(vi)** Is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

**(vii)** Has filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or Regulation A offering statement filed with the Commission that, within five years before such sale, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or

**(viii)** Is subject to a United States Postal Service false representation order entered within five years before such sale, or is, at the time of such sale, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

5. <u>Waiver</u>. No failure by any party hereto to insist upon the strict performance of any covenant, duty, agreement, or condition of this Subscription Agreement, or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any such breach or any other covenant, duty, agreement, or condition hereof.

6. <u>Governing Law</u>. This Subscription Agreement shall be construed in accordance with and governed by the internal laws of the State of Maryland.

7. <u>Execution in Counterparts</u>. This Subscription Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original. It shall not be necessary in making proof of this Subscription Agreement to produce or account for more than one counterpart.

8. <u>Further Assurances</u>. Investor, by executing this Subscription Agreement, agrees that Investor will take such actions and execute such further documents as Borderplex may reasonably request from time to time in order to carry out the purposes of this Subscription Agreement and the other Offering Documents.

**(Remainder of Page Left Intentionally Blank)**

1068107.2

## EXHIBIT A

1.    Securities Subscribed For.

The purchase price of the Securities subscribed for is $20,000,000 consisting of 2,580,645.16 shares (the "Purchased Shares") at $7.75 per share (See the "Subscription Agreement Instructions" for the minimum investment of shares permitted in connection with the Offering).

2.    Payment of the Securities.

(a)    $8,500,000 will be paid by Investor during the week of February 29, 2016 at which time 42.50% of the Purchased Shares shall be issued to Investor; and

(b)    $1,500,000 will be paid by the Investor no later than March 31, 2016 at which time 7.5% of the Purchased Shares shall be issued to Investor; and

(c)    $10,000,000 will be paid by Investor during the week of April 18, 2016 at which time the remaining Purchased Shares will be issued to Investor.

3.    Issuance of Security.

Borderplex will issue Investor a certificate representing Securities purchased by Investor as promptly as possible after each Funding Date and payment by Investor therefor. Borderplex will issue the applicable Securities in the name of Investor and will mail the documents evidencing the Securities to Investor's address as set forth on the signature page of the Subscription Agreement.

**(SIGNATURE BLOCK ON FOLLOWING PAGE)**

The foregoing Subscription Agreement (and Exhibit A thereto) is executed as of the date stated below by Investor.

Date:  March 18, 2016.

**INDIVIDUAL INVESTOR:**                    **ENTITY INVESTOR:**

_____          Borderplex Investment Partners, LLC
Name of Investor                           Name of Investor

By (Signature):_____          By (Signature):    ꟷ꞉ꞌꞏ

                                           Name (Please print): Daniel C. Burrell
_____
(Investor's U.S. Social Security           Title: Managing Member
number, if applicable)

                                           81-1435331
Investor's Address: _____        (Investor's U.S. taxpayer identification
                    _____         number, if applicable)

Investor's Phone Number: _____        Investor's Address:  401 Paseo de Peralta
                                                                 Santa Fe, NM 87501
Investor's Fax Number: _____
                                           Investor's Phone Number: 505-219-2811
Investor's Email Address: _____
_____          Investor's Fax Number: N/A

                                           Investor's Email Address: _____
                                           dburrell@bwrco.com

        Borderplex Realty Trust hereby accepts the subscription set forth in this Subscription Agreement.

Dated: _March___ _18_, 2016

                          Borderplex Realty Trust

                          By: _____

                          Printed Name: _Steven Weber_____
                          Title: _Vice President_____

## EXHIBIT B

### Joinder to Securityholders' Agreement

The undersigned, as of this 18th day of March, 2016, hereby joins in the execution of the Securityholders' Agreement of Borderplex Realty Trust, a Maryland real estate investment trust, dated as of October 30, 2006, to bind the signator by all of the terms and conditions thereof.

This joinder may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

Signed: _____

Signature line for individuals:

Print Name: _____

Date signed: _____

Signature block for trusts, partnerships, corporations, limited liability companies, etc.:

Name of Entity:        Borderplex Investment Partners, LLC

By: _____
Print Name: Daniel C. Burrell
Print Title: Managing Member
Date signed: March 18, 2016

The undersigned, on behalf of Borderplex Realty Trust, hereby agrees to and acknowledges the joinder of the foregoing signator to the Securityholders' Agreement.

Borderplex Realty Trust,
a Maryland real estate investment trust

By: _____
Name: Steven Weber
Title: Vice President

1068107.2

10

## INVESTOR QUESTIONNAIRE
(Individuals and Business Entities)

### A. General Information

1. Print Full Name of Investor: (either Individual or Entity – <u>choose one</u>)

   Individual:

   | First | Middle | Last |
   |---|---|---|

   LLC, Corporation, Trust, Partnership, Other:
   Borderplex Investment Partners, LLC

   Name of Entity

2. Address for Notices:

   401 Paseo de Peralta

   Santa Fe, NM 87501

3. Name of Primary Contact Person:

   Daniel C. Burrell

4. Telephone Number:

   505-219-2811

5. Facsimile Number:

   N/A

6. E-Mail Address:

   dburrell@bwrco.com

7. Permanent Address:
   (if different from Address for Notices above)

8. U.S. Taxpayer Identification or Social Security Number (as applicable):

   81-1435331

9. Authorized Signatory:

   Daniel C. Burrell

   Title:

   Managing Member

   Telephone Number:

   505-219-2811

   Telecopier/Facsimile Number:

   N/A

1068107.2                                           I-1

**B. Accredited Investor Status**

The Investor represents and warrants that the Investor is an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act of 1933, as amended (the "Securities Act") and has checked the box or boxes below which are next to the category or categories under which the Investor qualifies as an accredited investor:

FOR ENTITIES:

☐          (a)          An organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), a corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the Securities, with total assets in excess of $5,000,000.

☐          (b)          A trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Securities, if the purchase is directed by a sophisticated person with such knowledge and experience in financial and business matters as described in Rule 506(b)(2)(ii) of Regulation D under the Securities Act as to be capable of evaluating the merits and risks of an investment in the Securities.

X          (c)          An entity in which all of the equity owners are accredited investors as determined under any of the paragraphs (a) through (e) hereof. The questions set forth in this section B must be answered for each stockholder, partner, member or other owner of the undersigned if this is the only box checked for the Investor.

FOR INDIVIDUALS:

☐          (d)          A natural person with individual net worth (or joint net worth with that person's spouse) in excess of $1,000,000. For purposes of this item, "net worth" means the excess of total assets at fair market value (including property owned by a spouse), over total liabilities, but excluding from the calculation of total assets the value of Investor's principal residence.

OR

(e)          A natural person with individual income (without including any income of the Investor's spouse) in excess of $200,000, or joint income with spouse of $300,000, in each of the two most recent years and who reasonably expects to reach the same income level in the current year. For purposes of this item, "income" means adjusted gross income as reported for federal income tax purposes, increased by the following amounts: (i) the amount of any interest income received that is tax-exempt under Section 103 of the Code, (ii) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), (iii) any deduction claimed for depletion under Section 611 et seq. of the Code, and (iv) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Code prior to its repeal by the Tax Reform Act of 1986.

**C. Supplemental Data for Entities**

1. If the Investor is an *entity*, furnish the following supplemental data (individuals may skip this Section C of the Investor Questionnaire):

    Legal form of entity (trust, corporation, partnership, etc.): Limited Liability Company

    Jurisdiction of organization: Delaware

2. Was the Investor organized for the specific purpose of acquiring Securities?

☐ Yes     X No

3. Are shareholders, partners or other holders of equity or beneficial interests in the Investor able to decide individually whether to participate, or the extent of their participation, in the Investor's investment in Borderplex (i.e., can shareholders, partners or other holders of equity or beneficial interests in the Investor determine whether their capital will form part of the capital invested by the Investor in the Partnership)?

☐ Yes     X No

**D. Certain Additional Tax Information**

Additionally, for U.S. tax planning purposes, the following information is requested. Please check all categories applicable for U.S. tax purposes.

☐    1.    U.S. citizen.

☐    2.    U.S. resident.

☐    3.    Individual but neither a U.S. citizen nor a U.S. resident.

X    4.    U.S. corporation, company or trust.

☐    5.    Non-U.S. individual

☐    6.    Non-U.S. corporation, company or trust.

☐    7.    None of the above.

       The Investor understands that the foregoing information will be relied upon by Borderplex for the purpose of determining the eligibility of the Investor to purchase and own Securities. The Investor agrees to notify Borderplex immediately if any representation or warranty contained in this Subscription Agreement, including the Investor Questionnaire, becomes untrue at any time. The Investor agrees to provide, if requested, any additional information that may reasonably be required to substantiate the Investor's status as an accredited investor or to otherwise determine the eligibility of the Investor to purchase Securities.

The Investor agrees to indemnify and hold harmless Borderplex from and against any loss, damage, or liability due to or arising out of a breach of any representation, warranty, or agreement of the Investor contained herein.

INDIVIDUAL INVESTOR:

_____
(Name of Individual)


_____
(Signature)

_____
(Name of Spouse if joint Investor)


Date:_____

ENTITY INVESTOR:
      Borderplex Investment Partners, LLC
_____
(Name of Entity)

By:      _____
              (Signature)
Name:__Daniel C. Burrell_____
Title: Managing
Member_____


Date: ___March 18, 2016_____

1068107.2                                    I-4